On January 16, 1998, Varlon Joyner was indicted by a Franklin County grand jury, charged with single counts of felonious assault, a felony of the second degree, pursuant to R.C.2903.11; kidnapping, a felony of the first degree under the factual allegations presented here, pursuant to R.C. 2905.01; and, ethnic intimidation, in violation of R.C. 2927.12. The charges arose as a result of a February 26, 1997 altercation, which involved three of four roommates at an Ohio State University dormitory. Indicted jointly with Mr. Joyner for identical offenses was roommate Cameron Monroe. The victim of the alleged physical attack was a third roommate, Ankur Desai, an Ohio State University student who was born and raised in India. Relevant details regarding this incident are set forth below preceding our discussion of the assignments of error.
Mr. Joyner's jury trial commenced on March 16, 1998. On March 25, 1998, the jury returned verdicts of not guilty as to felonious assault, kidnapping and ethnic intimidation. However, the jury did find the defendant guilty of abduction, a lesser-included offense of kidnapping, a third-degree felony, pursuant to R.C. 2905.02; and, assault, a lesser-included offense of felonious assault, a misdemeanor of the first degree pursuant to R.C. 2903.13.
Following the preparation of a presentence investigation ("PSI") report, the trial court conducted a sentencing hearing on May 19, 1998. The judge sentenced Mr. Joyner to concurrent terms of imprisonment of two years for the abduction conviction, and six months for the misdemeanor assault conviction. The convictions and sentences were journalized pursuant to an entry filed May 22, 1998.[1]
Varlon A. Joyner (hereinafter "appellant") has timely appealed both convictions and the sentence imposed for the abduction conviction, assigning five errors for our consideration:
"FIRST ASSIGNMENT OF ERROR
 "The trial court erred, in violation of Evid.R. 404(A), in permitting a witness for the State to give character evidence.
"SECOND ASSIGMNENT OF ERROR
 "The trial court erred, in violation of Evid.R. 801 and Evid.R. 802, in permitting the prosecutor to bolster the credibility of the alleged victim through the admission of a prior written statement."
"THIRD ASSIGNMENT OF ERROR
 "Appellant was denied his right to a fair trial as a result of prosecutorial misconduct.
"FOURTH ASSIGNMENT OF ERROR
 "The trial court erred in refusing to instruct on the lesser-included offense of unlawful restraint.
"FIFTH ASSIGNMENT OF ERROR
 "The trial judge abused his discretion in imposing a two-year term of incarceration for the offense of abduction."
Our review of the record reveals the following facts adduced at trial regarding the background and sequence of events leading up to the assault upon Ankur Desai. Mr. Desai shared an Ohio State University dormitory room in Blackburn Hall with appellant, Cameron Monroe and Jonathan Jones. All of the men, excluding appellant, testified regarding their respective relationships with one another and their fairly similar versions of the altercation itself. The defense rested without calling any witnesses.
Mr. Jones testified that, initially, they all got along well. Mr. Desai grew to be more authoritative, complaining about such matters as his roommates' cleanliness, and arguments soon arose. Appellant and Mr. Monroe were upset with Mr. Desai's excessive use of profanity and discussed this problem with him. Mr. Desai was also reportedly angry because appellant spoke with a friend about Desai's possible drinking problem. Mr. Jones testified that appellant commented to someone on the telephone that Mr. Desai was out drinking. Apparently, this information reached Mr. Desai's mother, who called to complain about her son's conduct. According to Mr. Jones, Desai became angry and confronted appellant, using a great deal of profanity. (Tr. 268-280, 626-651.)
Over the course of approximately two months, Mr. Desai and appellant increasingly exchanged negative comments and messages. For example, appellant purportedly wrote on a board outside their dorm room, "Born in America, what about you?" Appellant remarked that he felt that Desai was becoming too Americanized. In response, Mr. Desai taped a letter to the dorm room that contained derogatory remarks about appellant. Desai then called appellant "a fat bitch." (Tr. 267-296, 548-574, 632-643, 763.)
On February 26, 1997, Mr. Desai returned to the dorm room after playing tennis. He planned to take a shower and then go to his 2:30 class. As he entered the room, he saw Mr. Monroe moving items on his (Desai's) shelf, and that a framed photograph of his parents had fallen down. Mr. Desai became angry, swearing at Mr. Monroe and ordering him to pick up the frame. In response, Mr. Monroe threw the frame on the shelf, which made Mr. Desai even angrier. Desai said he was "pissed" and demanded to know why Monroe had thrown the photograph. According to Mr. Desai, appellant was in the room at the time, but he was not involved in the situation. (Tr. 199-201, 458.)
Mr. Desai eventually took his shower and went to the room of Matt Nisbet, a neighbor who was in the 2:30 class with him. They made plans to meet and walk to class together. (Tr. 202, 332.)
While Mr. Desai was eating lunch, Mr. Monroe entered the room and demanded to know why Desai swore at him earlier. According to Desai, Monroe then started to slap him. As Desai brought up his hands in a defensive manner, he (Desai) brushed them across Monroe's face. Mr. Monroe asked Desai why he hit him, and then Monroe began striking Mr. Desai. According to Mr. Desai, appellant had been just an observer until this point. Appellant then joined Mr. Monroe, pushing Desai to the carpet and kicking him in the face, stomach and legs. (Tr. 202-203.)
Mr. Desai also testified that appellant and Monroe turned on some music and told him that they would beat him while the songs played. They commented on how many songs were left while the beating persisted. According to Mr. Desai, appellant struck him on the back with an umbrella and threw a wooden chair on him. During the course of this beating, Mr. Desai had curled up in a defensive position. He also pulled cushions from the couch over him to protect himself from the blows. (Tr. 204, 481-494.)
Mr. Desai testified that appellant and Monroe made him pick up some CDs that had been knocked over during the fray. Appellant got out scissors and cut a piece of Desai's hair. Then, Monroe put his shoes in front of Desai and made him kiss or lick them. Appellant also made him kiss his feet. (Tr. 205-206.)
Mr. Desai testified that Matt Nisbet came to the room twice to ask for him. Both times, appellant told Nisbet that Desai was not there. According to Mr. Desai, he did not say anything because he was afraid. He felt like he was surrounded and could not escape. Desai estimated that this beating lasted for approximately thirty minutes. (Tr. 208-210, 550.)
When appellant and Monroe left, Mr. Desai went to the room of Jerry Hiler, the dorm's resident assistant. Mr. Hiler testified that he almost did not recognize Mr. Desai because of the injuries. Desai, who was shaking and had a gash under his eye, told Hiler that he had been beaten by his roommates. Hiler contacted a Mr. Sumit, the assistant director at Blackburn Hall. Mr. Sumit was a friend of Mr. Desai's. When Sumit saw his friend's condition, he contacted the university police. (Tr. 212-214, 363.)
Mr. Desai was taken to the hospital, where x-rays and a CAT scan revealed no broken bones or other internal injuries. His injuries did not require stitches; however, the gash under his eye left a scar. The examination and testing took approximately seven to eight hours, but he was not admitted. Physicians instructed him to rest for two weeks and prescribed ibuprofen and Tylenol. (Tr. 233-234, 531-532.)
John Berry, the acting director of student judiciary affairs at the school, testified regarding statements made at a university judiciary "hearing" requested by appellant. Appellant, Desai and Jones testified. According to Mr. Berry, appellant admitted that he had been involved in a physical assault on Mr. Desai. Appellant testified at this proceeding that Mr. Monroe accused Desai of hitting him. Desai then came off the couch and Monroe threw him back. Appellant stated that he tried to keep the confrontation between Desai and Monroe from escalating by grabbing Desai to prevent him from hitting Monroe again. When Desai kicked and punched appellant, appellant became more physical with him, striking back in defense. Appellant admitted that Desai asked them to stop beating him and kissed both of their feet, although they did not tell him to. (Tr. 706-713, 744-757, 762, 774.)
According to Mr. Berry, appellant stated that the estimated thirty-minute period included the time that Mr. Desai was in the shower. Appellant denied Mr. Desai's allegations that he was beaten to music. (Tr. 762-763.)
Captain John Petry, an Ohio State University police officer, testified regarding his interview with appellant on the day of the incident. According to Captain Petry, appellant told him that he was not watching when the fight began between Monroe and Desai. At one point, appellant heard Monroe call out, " 'You hit me. You hit me.' " Appellant walked over and grabbed Desai. Mr. Monroe then struck Desai several times. Mr. Desai struck appellant, and appellant struck him back. Mr. Desai fell to the ground, and the men continued to hit and kick him. According to Petry, appellant admitted hitting Desai with an umbrella. (Tr. 787.)
Captain Petry acknowledged that his investigative summary, which included a statement prepared by Mr. Desai, did not contain notations regarding ethnic statements or writings. The summary also did not indicate that Mr. Desai had been forced to kiss or lick anyone's shoes or that there was music playing during the fight.
Turning to appellant's arguments on appeal, his first assignment of error contends that the trial court erred in permitting a state's witness to give character evidence, in violation of Evid.R. 404(A), which provides, in pertinent part:
 "(A) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
"* * *
 "(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible * * *."
The specific testimony at issue is that of Jonathan Jones. Appellate counsel's characterization of the purportedly objectionable testimony is that it amounted to inadmissible character evidence of the victim, Ankur Desai. According to appellant, Jones expressly testified that Desai "was not prone to violence and that he would have been surprised to discover that Desai was the aggressor in the fight." (Brief of Appellant, 9.) According to appellant, this prejudicial testimony undermined the apparent defense theory that appellant acted in the defense of a third person, and refuted appellant's claims that he had tried to restrain Desai, who began the physical altercation with Cameron Monroe.
Appellant's summary of the testimony is somewhat imprecise. The testimony at issue reads as follows:
 "Q. [Prosecutor]: Okay. You had the opportunity to observe the behavior of the people; you said that on cross-examination?
"A. [Jonathan Jones]: Um-hmm.
 "Q. During any of your observations, behavior of the roommates, did you ever observe Ankur becoming, did you ever observe Ankur become physically aggressive towards [appellant] or Cameron?
"A. No.
 "Q. You testified that [appellant] told you that Ankur was the aggressor towards Cameron; is that correct?
"A. That's right.
"Q. Did that surprise you?
"A. Yes.
 "* * * [Defense counsel objects as to relevancy; objection overruled.]
"Q: Did that surprise you?
"A. Yes.
"Q. Why?
 "A. Because, you know, I've yelled at Ankur two times and I have, you know, cussed him out and he never did anything to me, he, you know, said what he had to say, he backed down and that was it, and I was the smallest person in the room. So for Ankur to be physically aggressive with [appellant], who is bigger than me, you know, stronger than me, and Cameron, who was the biggest and the strongest in the room, I thought that was a little bit odd." (Tr. 688-689.)
Thus, the state is technically accurate in its observation that the witness did not testify verbatim that Mr. Desai was non-aggressive and unlikely to have started a fight. Instead, the witness described a few of his own personal experiences with Desai and his surprise upon being told that Desai initiated the fight. Nevertheless, notwithstanding this technical reading of the testimony, a reasonable inference exists, at least in one witness's personal opinion, that Mr. Desai's personality and general behavior might be characterized as generally non-aggressive.
Appellant also relies upon Evid.R. 608(A), which provides that character evidence may be admissible to bolster the credibility of a witness in only very limited circumstances. Specifically, character evidence in the form of opinion or reputation may refer only to truthfulness or untruthfulness, and may be admissible only to rebut evidence attacking the truthfulness or untruthfulness of the witness. Given that Evid.R. 608(A) speaks only to attacking the credibility of awitness, the rule does not apply here because the purportedly inadmissible testimony did not involve witness Jones's credibility.
The state submits that any error in violation of Evid.R. 404(A)(2) should be deemed harmless. Irrespective of who instigated the fight, there was sufficient evidence demonstrating that appellant, with Monroe, continued and even escalated the attack. Based upon the record before us, we find no prejudicial error in admitting the testimony.
The first assignment of error is overruled.
Appellant's second assignment of error raises another alleged evidentiary error. Appellant contends that the trial court erred in permitting the prosecution to bolster the credibility of Mr. Desai by admitting into evidence Desai's prior written statement, in violation of Evid.R. 802. Specifically, appellant argues that the trial court abused its discretion by allowing Mr. Desai to read in open court his written statement, completely consistent with his trial testimony, given to police immediately following the incident.
Evid.R. 802 sets forth the general rule prohibiting admissibility of hearsay evidence. "Hearsay" is defined as a statement, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 803, Evid.R. 804 and Evid.R. 807 set forth a plethora of exceptions to the general prohibition against hearsay.
The trial court found that the prior consistent statement was admissible pursuant to Evid.R. 801(D)(1)(b). Evid.R. 801(D) sets forth statements which "are not hearsay if":
 "Prior Statement by Witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony * * *, or (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."
The state properly concedes that the trial court erred in admitting this testimony pursuant to the non-hearsay definition set forth in Evid.R. 801(D)(1)(b), or any other definition. However, the state again contends that notwithstanding this error, no prejudice has been demonstrated. Again, we agree, based upon the record in its entirety. While the veracity of the victim's trial testimony was arguably bolstered by the erroneously admitted statement, the jury's verdict acquitting appellant of the more severe charges and convicting him of the lesser-included offenses was completely reasonable based upon the testimony of all the witnesses presented. Appellant has not demonstrated prejudice in the erroneous admission of the victim's prior consistent statement.
The second assignment of error is overruled.
In his third assignment of error, appellant contends that he was denied his right to a fair trial as a result of purportedly prejudicial prosecutorial misconduct. Specifically, appellant points to the prosecution's conduct during closing arguments. According to appellant, he was prejudiced as a result of the prosecution's improper conduct in several particulars.
The record indicates that the prosecution, on two separate occasions, made comments to the effect that appellant changed his story after he met with his attorney. The prosecution also commented on the fact that appellant failed to introduce any evidence.
Again, the state responds that error, if any, was harmless.
We agree with appellant that the prosecution's conduct was unnecessary and inappropriate, at best. However, we cannot say that the limited instances of inappropriate comments by the prosecution prejudiced appellant to the extent that he was denied a fair trial. Based upon a careful reading of closing arguments as a whole, and in consideration of the jury's reasonable verdicts, the isolated improprieties of the prosecution were not prejudicial.
Appellant relies upon State v. Foth (Aug. 15, 1996), Franklin App. No. 95APA12-1621, unreported (1996 Opinions 3271), in which this court reversed a conviction based upon the prosecution's impermissible suggestion to jurors that they draw an inference of guilt from the fact that the defendant exercised his Sixth Amendment right to counsel. The court cited six separate instances where the prosecutor noted that the defendant consulted an attorney soon after the alleged crime; the blatantly obvious suggestion was that an innocent person had no need for an attorney, a reprehensible notion given the Sixth Amendment right to counsel.
We have reviewed the evidence as set forth by the court inFoth and find both the facts and law to be distinguishable from this case. The prejudice found in the Foth case was based in large part upon the fact that the credibility of witnesses, a subjective matter, was the primary issue; therefore, the prosecutors remarks had the potential impact of critically tainting the jury's verdict. In this case, while credibility of witnesses was indeed an issue, there was also significant physical evidence, "objective evidence — that is immune from the taint of a prejudicial remark * * *," in the form of the victim's injuries. Id. at 3292.
Furthermore, we believe the comments were far more egregious in Foth than those inappropriate remarks made here. Accordingly, while we do not condone the impermissible remarks uttered by the prosecution in this case, we do not find prejudice.
The third assignment of error is overruled.
By his fourth assignment of error, appellant contends that the trial court, after agreeing to instruct the jury on the lesser offenses of assault and abduction, abused its discretion in refusing to instruct the jury on unlawful restraint, a lesser-included offense of kidnapping and abduction.
This issue requires comparison between the elements of the respective offenses. "Abduction" is proscribed by R.C. 2905.02, in pertinent part, as follows:
 "(A) No person, without privilege to do so, shall knowingly do any of the following:
"* * *
 "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear [.]"
Pursuant to R.C. 2905.03, "unlawful restraint" occurs when a "* * * person, without liberty to do so, * * * knowingly restrain[s] another of his liberty."
The trial court did not abuse its discretion in failing to charge the jury on unlawful restraint. While the jury conceivably could have found appellant guilty of that offense, given the forceful, threatening manner in which the victim was restrained here, in addition to the risk (and actual infliction of) physical harm, the jury could neither reasonably nor lawfully have ignored this evidence; thus, the jury very reasonably convicted appellant of abduction and, we believe, acquitted him of the greater offense, kidnapping.
The fourth assignment of error is overruled.
In his fifth and final assignment of error, appellant argues that the trial court abused its discretion in imposing a two-year term of incarceration for the abduction conviction. The record establishes that the trial court complied with the mandate of R.C. 2929.12, which requires sentencing courts to consider many factors to assess the offender's likelihood of recidivism and the seriousness of his conduct. Appellant argues that community control was the appropriate sanction under the circumstances, citing such factors as the PSI's recommendation that appellant's sentence include only thirty days in jail; the victim's relatively minor injuries (notwithstanding the factual error in the PSI indicating that the victim suffered broken bones and internal injuries); appellant's lack of a criminal or delinquency record; and, appellant's demonstrated remorse.
The record of the sentencing hearing clearly reveals the court's consideration of the relevant factors. With respect to factual errors contained in the PSI, we first note that appellant's counsel, after stating that he reviewed the PSI prior to sentencing, expressly indicated that he had "no problem" with the information contained therein. (Tr. 1079.) The more significant observation, however, is that the trial judge unequivocally acknowledged that the victim was "very fortunate" to have sustained only a "minimal amount of injury," in light of the "brutality" of the offense. (Tr. 1086.) Therefore, the judge clearly did not base the sentence on the inaccurate finding in the PSI regarding the extent of the victim's injuries.
The trial judge expressly based the sentence on the brutal nature of the assault, as objectively evidenced by photographs admitted at trial and the testimony of disinterested third parties. The court acted well within its discretion in concluding that the requested lesser community control sanction would "demean the seriousness of the offense." (Tr. 1087.)
The fifth assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
YOUNG, J., concurs.
LAZARUS, P.J., concurs in judgment only.
YOUNG, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] For purposes of clarity, we note that the sentencing entry erroneously indicates that assault is a third-degree felony and that abduction is a misdemeanor of the first degree. Reading the document in its entirety, the error is plainly a transpositional one, "assault" having been transposed with "abduction" in the opening paragraph pertaining to the verdicts. The more pertinent paragraph, that being the court's imposition of sentence, correctly identifies the offenses and the permissible sentences for both.